*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY MASTERS III,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 344970
Wayne Circuit Court
LC No. 17-001728-01-FH

Before: K. F. KELLY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, two counts of assault with a dangerous weapon (felonious assault), MCL 750.82, two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and one count of larceny from a motor vehicle, MCL 750.356a(1). The trial court sentenced defendant to concurrent prison terms of 2½ to 10 years for AWIGBH, two to four years for each count of felonious assault, and two to five years for larceny from a motor vehicle. Defendant was also sentenced to two-year prison terms for each felony-firearm conviction, to be served consecutively to defendant's other sentences and concurrently with each other. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On November 12, 2016, Quinte Sanders and his girlfriend, Allona Shaw, went to Masters Auto Repair (Masters) in Detroit, where defendant was employed, to pick up Sanders's vehicle. Sanders and defendant got into a heated argument about the shop's liability for damage to the vehicle. Sanders claimed that the damage had occurred while the vehicle was in the shop's care,[1] and defendant told Sanders to leave. According to Sanders, defendant then lifted his shirt to reveal a pistol. Sanders responded by pulling out his own gun, but quickly left the shop after brandishing it momentarily in the customer service area. Shaw testified that as she followed Sanders out of the

---

[1] Sanders turned out to be correct, as an employee of Masters testified that he had accidentally backed Sanders's Yukon Denali into another vehicle.

shop, defendant pointed his gun in her face, demanding that she leave. Outside, Sanders paced in front of the shop with gun in hand until another mechanic came outside and spoke to him calmly about resolving the problem. Sanders gave the gun to Shaw before following the mechanic into the shop's garage. Shaw placed the gun in the trunk of her vehicle before proceeding into the shop, although she was unable to get through the locked door into the garage.

Once inside the garage, Sanders was attacked and beaten by two other employees, Steven Gillman and Joseph Cristao. During this attack, Cristao struck Sanders on the head and face several times with an airsoft pistol. Defendant was outside of the garage at the time. When defendant entered the garage, Sanders was still on the ground, but attempting to stand. Defendant immediately rushed toward Sanders and began punching him. After several seconds, Cristao joined in and repeatedly struck Sanders with his foot. When this second attack ended, Sanders made his way to the door where Shaw was waiting. Defendant pointed a gun at them and told them to get out. Sanders sustained a severe laceration on his head and required treatment for a concussion and traumatic brain injury. He had little memory of anything that occurred after he was pistol-whipped in the first attack.

Four people were initially charged in connection with the incident: defendant, Cristao, Gillman, and defendant's father, Larry Masters, Jr. (Larry). The prosecutor dismissed the charges against Larry, Gillman pleaded guilty to aggravated assault, and Cristao pleaded guilty to AWIGBH and felonious assault pursuant to a *Cobbs*[2] evaluation after the jury was selected for defendant and Cristao's joint trial. The trial proceeded as to defendant only. The prosecution presented video recordings from several of the shop's surveillance cameras and elicited testimony from Sanders, Shaw, and Larry about the events that were depicted in the recording. In pertinent part, the recording included footage of the initial encounter between Sanders and defendant in the customer service area, Sanders's activities outside of the shop, and both batteries that occurred inside the garage. There was also footage in which defendant could be seen removing electronic equipment from Sanders's Denali several hours later. Defendant did not testify at trial. The jury acquitted defendant of one count of felonious assault stemming from the pistol-whipping that occurred during the first attack, but found him guilty of AWIGBH, two counts of felonious assault, two counts of felony-firearm, and one count of larceny from a motor vehicle. The trial court sentenced defendant as described.

On January 1, 2019, defendant filed a motion for a *Ginther*[3] hearing and new trial, alleging that his trial counsel was ineffective for advising defendant not to testify and for failing to review all of the surveillance footage and offer into evidence footage that showed that defendant was not present during the initial assault on Sanders. After holding a *Ginther* hearing, the trial court denied defendant's motion for a new trial.

This appeal followed.

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel in several respects, most of which involve his attorney's failure to object to alleged errors in the proceedings. Defendant also argues that his attorney prevented him from testifying and failed to adequately investigate the case. We disagree.

"Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). We review for clear error a trial court's findings of fact. *Id.* "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (quotation marks and citation omitted). We review de novo questions of law. *Head*, 323 Mich App at 539. To preserve these issues for review, defendant was required to move for a new trial or evidentiary hearing before the trial court or file a motion to remand in this Court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). As stated, defendant moved for a *Ginther* hearing and new trial below; however, he did not raise all of the challenges to defense counsel's performance that he now raises on appeal. The trial court held a *Ginther* hearing at which defendant and his trial attorney testified. The only issues that were addressed at the hearing concerned whether defendant had waived his right to testify, whether defense counsel had reviewed all of the surveillance footage from November 12, 2016, and the substance of defendant's proposed testimony. To the extent that defendant failed to raise his ineffective assistance claims in his motion for a new trial or establish a record concerning his claims at the *Ginther* hearing, our review is limited to mistakes apparent on the record. *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019); *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018).

A defendant who claims to have been denied the effective assistance of counsel bears a heavy burden to overcome the presumption of effective assistance. *Head*, 323 Mich App at 539. To do so, the defendant must generally satisfy the two-part test announced in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Muhammad*, 326 Mich App at 63. The defendant bears the burden of establishing the factual basis for his claim. *Id.*

## A. ADVICE NOT TO TESTIFY

Defendant first argues that he was denied the effective assistance of counsel when his attorney advised him not to testify. We disagree.

Defendants in a criminal proceeding have a constitutionally protected right to testify in their defense. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). The decision to assert or waive that right is the defendant's alone. *Id.* Here, the trial court found that defendant waived his right to testify, noting that the court had asked defense counsel if defendant wished to go on record about his decision not to testify, to which defendant shook his head no. The trial court's finding was not clearly erroneous. *Head*, 323 Mich App at 539. Defendant was not denied his right to testify.

Moreover, defense counsel's advice to defendant did not constitute ineffective assistance of counsel. Decisions regarding what evidence and witnesses to present at trial are generally considered matters of trial strategy that should not be second guessed with the benefit of hindsight. *Muhammad*, 326 Mich App at 66. Consequently, failure to call a witness will not support a claim of ineffective assistance of counsel unless it deprived the defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Defendant argues that he should have been called as witness because he could have testified about his state of mind, contradicted the complainants' assertions that he pointed a gun at them, explained that he did not know Sanders was unarmed when he encountered him in the garage, and described the shop's policy of removing valuable belongings from a customer's vehicle when the vehicle is to be parked on the street overnight. Defense counsel testified that his strategy at trial was to convince the jury that defendant did not commit the felonious assaults against either complainant and that "whatever occurred in the garage area, [defendant] acted in self-defense." Defense counsel also explained his general preference for attacking the sufficiency of the prosecutor's proofs, as opposed to presenting additional evidence or testimony to rebut the prosecutor's case, and that he had concluded that he did not want defendant subjected to cross-examination.

The trial court found that defendant's attorney acted reasonably and provided sound advice about the risks of testifying. We agree. Because the surveillance video did not provide a substantial factual basis for the felonious assault charges (which were based on defendant pointing a gun at Shaw, an event not captured on video), those charges turned primarily on the credibility of the complainants. Defense counsel went to great lengths to attack the complainants' credibility, focusing on inconsistencies in their statements, testimonies, and the surveillance footage. For example, defense counsel pointed out that Sanders had testified that defendant pistol-whipped him, but had not mentioned this in his statement to police; further, defense counsel elicited testimony from Sanders that he saw defendant hit him during the first beating—testimony contradicted by the surveillance footage that showed only Cristao and Gillman attacking Sanders. Similarly, defense counsel cast doubt on Shaw's testimony that defendant pointed a gun at her twice by asking her about her initial statement to the police, in which she reported that defendant only pointed a gun at her once. He also argued that Shaw's reactions were not consistent with a person who had just been threatened with a gun; the surveillance video showed her calmly walking out of the shop and, despite her alleged shock and fear after facing defendant's gun, she stored her own gun in the trunk of her vehicle after Sanders handed it to her instead of keeping it in her possession for protection.

The events that resulted in the AWIGBH and larceny charges were captured by the surveillance cameras. Defense counsel elicited testimony from Larry regarding a shooting that occurred at the shop in 2010 as evidence that defendant would likely have a heightened sense of fear in response to Sanders's actions. Defense counsel emphasized defendant's absence during the initial attack and drew the jury's attention to the fact that Sanders had angrily just brandished a gun in the shop. In addition, while it was clear that defendant punched Sanders, defense counsel maintained that defendant did not use a weapon and was not responsible for the most violent attacks against Sanders. In sum, defense counsel was able to present a reasonable argument that

defendant had acted in self-defense or in defense of others, without having to rely on testimony from defendant.  Defense counsel's trial strategy was within the "wide range of reasonable professional assistance" that constituted sound trial strategy.  *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002) (quotation marks and citation omitted).

Regarding the larceny charge, neither attorney gave the charge significant attention at trial and, in closing arguments, defense counsel merely argued that the jury would have to assess the video (showing defendant removing Sanders's personal property from the Denali) for itself.  At the *Ginther* hearing, defendant testified that he had removed Sanders's personal property from the Denali out of concern that the items might be stolen if the Denali remained parked on the street overnight.  Defense counsel testified that he chose not to focus on the larceny issue for fear that it would distract the jury from the self-defense issue.  Defense counsel's view of the matter was not objectively unreasonable.  There was no getting around the fact that defendant was recorded removing Sanders's property from the Denali.  The property was later discovered in defendant's personal vehicle.  Defense counsel could have reasonably concluded as a matter of trial strategy that presenting defendant's self-serving testimony that he removed the property of Sanders (a man with whom he had just had a violent encounter), from his vehicle and placed it into his own out of concern that it might be stolen, bore an unacceptable risk of damaging the credibility of the defense as a whole.  Again, defense counsel's conduct fell within the wide range of reasonable professional assistance.  *Id*.

Furthermore, even if defense counsel's decision to advise defendant not to testify was objectively unreasonable, defendant cannot show prejudice.  After considering defendant's testimony at the evidentiary hearing, the trial court found it improbable that the jury would have reached a different result if defendant had testified at trial.  We agree with the trial court.  The trial court noted a number of reasons for finding defendant's testimony less than credible.  The trial court's analysis was well reasoned and rested primarily on the relative credibility of the witnesses who appeared before it.  Credibility determinations of this sort are entitled to deference on appeal.  *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018).  Defendant has not established that he was prejudiced by defense counsel's strategic advice or that the trial court clearly erred in this regard.  *Muhammad*, 326 Mich App at 63.

## B.  SURVEILLANCE FOOTAGE

Defendant also argues that his defense counsel was ineffective in failing to introduce surveillance footage from another camera—Camera 6—which showed him outside at the time Sanders was first battered by Gillman and Cristao.  We disagree.  Again, decisions regarding what evidence to present are generally presumed to be matters of trial strategy.  *Muhammad*, 326 Mich App at 66.  Although defense counsel testified at the *Ginther* hearing that he had viewed the surveillance footage in its entirety, he had no memory of seeing the footage from Camera 6.  To the extent that he was unaware of the footage, he could not have made a strategic choice to omit it from trial.  *Trakhtenberg*, 493 Mich at 52.  But even if defense counsel's failure to admit the Camera 6 footage fell below an objective standard of reasonableness, defendant cannot show prejudice.  The prosecution did not attempt to prove that defendant was involved in the initial attack—in fact, the prosecution explicitly conceded during closing arguments that defendant was outside when that attack occurred.  And the surveillance footage that was shown to the jury depicted only Cristao and Gillman initially attacking Sanders.  Because defendant's whereabouts

were essentially undisputed, defendant cannot establish a reasonably probability that the result of his trial would have been different if the Camera 6 footage had been presented to the jury. *Muhammad*, 326 Mich App at 63.

## C. PRETRIAL INVESTIGATION

Defendant also argues that he was denied the effective assistance of counsel because his attorney failed to interview any witnesses or subject the prosecutor's case to meaningful adversarial testing. Defendant argues that his trial counsel's performance constituted a complete denial of counsel as described in *United States v Cronic*, 466 US 648, 658-660; 104 S Ct 2039; 80 L Ed 2d 657 (1984), and therefore prejudice should be presumed. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007); see also *People v Kammeraad*, 307 Mich App 98, 125; 858 NW2d 490 (2014), quoting *Cronic*, 466 US at 659. We disagree.

Defendant's reliance on *Cronic* is misplaced. *Cronic*'s presumption of prejudice applies only when defense counsel's failure is complete, as opposed to deficient at specific points in the proceedings. *Bell v Cone*, 535 US 685, 697; 122 S Ct 1843; 152 L Ed 2d 914 (2002). "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind." *Id*. Defense counsel met with defendant for trial preparation, reviewed police reports and surveillance footage and was very familiar with the facts of the case. He cross-examined both complaining witnesses about inconsistencies in their testimonies, prior statements, and the surveillance video. Because it is evident that defense counsel's investigation, however limited, did not result in a *complete* failure to subject the prosecutor's case to meaningful adversarial testing, *Cronic* is inapplicable. *Id*.

Nor was counsel's investigation ineffective under the *Strickland* standard. "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52 (quotation marks and citation omitted). Defendant's insistence that defense counsel failed to interview any witnesses before trial is not supported by the record. This matter was not explored at the *Ginther* hearing, leaving this Court without a factual record for determining whether defense counsel actually interviewed any witnesses or whether he had strategic reasons for choosing not to do so. Defendant has failed to establish the factual predicate for his claim.[4] *Muhammad*, 326 Mich App at 63. And defense counsel's alleged failure to uncover the Camera 6 footage before trial, even if true, would not constitute ineffective assistance for the reasons already discussed.

---

[4] Although defendant presents this Court with affidavits from Larry and Cristao stating that defense counsel did not interview them, he has not requested that this Court remand for a second *Ginther* hearing, nor has he explained why this issue could not have been explored during the first *Ginther* hearing. We therefore decline to permit the expansion of the record on appeal. See MCR 7.210(A); *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013).

## III. LAY WITNESS OPINION

Defendant argues that the trial court erred by permitting a police detective to testify about the content of the surveillance video. We agree that the testimony was improper lay witness opinion, but conclude that the error was harmless.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defense counsel did not object at trial that the detective's testimony was impermissible lay opinion testimony. This Court reviews unpreserved claims regarding the admissibility of evidence for plain error. *Chelmicki*, 305 Mich App at 62.

Detective Derryck Thomas testified at trial concerning the surveillance video he had obtained from Masters. At the end of his cross-examination, defense counsel asked Detective Thomas whether the surveillance video showed defendant in the garage during the initial attack and whether defendant could be seen holding an object as he struck Sanders. Detective Thomas answered both questions in the negative. On redirect-examination, the prosecution asked the detective whether he could see what was in defendant's hands as defendant ran into the garage just before the second battery and, again, Detective Thomas answered no. After playing the footage depicting defendant striking Sanders, the prosecution asked whether "in the 14 times that we see [defendant's] arm move back and forth" the detective could see what was in defendant's hands. Defense counsel objected on the grounds that Detective Thomas had not testified that he saw defendant's arm move 14 times, and the trial court sustained the objection. Replaying the same footage, the prosecution asked Detective Thomas to count how many times he saw defendant's hand swing at Sanders. Detective Thomas counted to 13 and said, "And they hit [Sanders] on— they hit him and begin stomping him, so." Defense counsel objected again, stating that Detective Thomas could not have seen defendant "stomping anybody." The trial court responded: "[I]f he says he saw [defendant] stomping somebody, I guess that's what he says. I mean there's hardly any point in our quibbling over what the video shows or doesn't show. That's what he said." Detective Thomas then confirmed that, to him, it appeared as though the video showed defendant "stomping."

Under MRE 701, a lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." However, a lay witness "may not opine about the defendant's guilt or innocence in a criminal case." *Heft*, 299 Mich App at 81. Further, a police witness may not testify to the contents of video shown to the jury if they stand in the same position as the jury; doing so invades the province of the jury to determine defendant's guilt with the evidence before it. See *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013). Like the officer in *Fomby*, Detective Thomas did not have personal knowledge of the events the video depicted and merely testified about his perception of the video itself. Further, Detective Thomas's statements that he counted at least 13 punches from defendant, and that he saw "stomping," invaded the jury's role as fact finder. *Id*. at 52-53.

-7-

However, defendant cannot establish that the challenged testimony affected his substantial rights. A jury is always "free to reject [a witness's] opinion on the basis of the evidence adduced at trial . . . ." *McFarlane*, 325 Mich App at 523. Despite defendant's contention to the contrary, it is far from certain that the jury gave the improper opinion testimony any credence. The jury viewed the surveillance footage repeatedly throughout three days of proceedings and had access to it during deliberations. The jury heard eyewitness accounts of what occurred both through narrations of the surveillance and on the basis of the eyewitnesses' independent recollections. And regardless of how many times defendant struck Sanders or whether he also "stomped" on Sanders, the jury was presented with sufficient evidence to conclude that defendant had attacked Sanders with the intent to do great bodily harm, and to reject his claim of self-defense. Considering the evidence presented at trial and the circumstances in which the improper testimony was presented, there is no reasonable basis to conclude that Detective Thomas's testimony affected the outcome of the proceedings. *Wiley*, 324 Mich App at 151.

## IV. JURY INSTRUCTIONS

Defendant also argues that the trial court clearly erred by giving defective jury instructions, or in the alternative that defense counsel was ineffective for failing to object to instructional error. While we agree that the trial court misspoke while instructing the jury on Count 4, we find that error harmless; we find defendant's remaining claims of error to be without merit.

A criminal defendant has a fundamental right to have his or her guilt determined by a properly instructed jury. *Head*, 323 Mich App at 537. "A defendant is thus entitled to have all the elements of the crime submitted to the jury in a charge which [is] neither erroneous nor misleading . . . ." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011) (quotation marks and citation omitted; alteration in original). Jury instructions need not be perfect if, on the whole, they adequately protect defendant's rights. *People v Bell*, 209 Mich App 273, 278; 530 NW2d 167 (1995).

Defendant raises three alleged deficiencies in the jury instructions. First, defendant argues that defense counsel erred by failing to request a jury instruction concerning Cristao's plea agreement. Defendant has not established the factual predicate for this claim. *Muhammad*, 326 Mich App at 63. Defendant contends that Cristao's plea agreement was discussed in front of the jury, but the record does not support this contention. Further, our review of the instruction given by the trial court concerning Cristao's absence shows that it adequately protected defendant's rights. *Bell*, 209 Mich App at 278. After Cristao accepted a plea offer on the first day of trial (outside the presence of the jury), the trial court instructed the jury as follows on their return:

> There, uh, there was another development that took us a little time to work out. But just briefly you will probably notice that Mr. Evelyn and his client Mr. Cristao are no longer with us. They are no longer a part of this trial. I'm going to ask you, or actually tell you not to concern yourselves with that or the whys or the wherefores.
>
> As I told you, um, in your preliminary instructions yesterday when there were two defendants in this case, you are to give each defendant separate consideration. And now you will just give the remaining defendant separate

consideration and concern yourselves only with the evidence that's presented against him and no one else.

Don't concern yourselves with the absence of the second defendant. And that's an issue that should not even enter into your deliberations.

By instructing the jury that Cristao's absence from the case should not enter the jury's deliberations, the court effectively conveyed that the disposition of the charges against Cristao was not evidence. For that reason also, defense counsel was not ineffective for failing to request a more specific instruction. See *People v Stokes*, 312 Mich App 181, 204; 877 NW2d 752 (2015), vacated in part on other grounds 501 Mich 918 (2017).

Defendant also argues that the trial court erred when it instructed the jury concerning Count 4, which charged felony-firearm predicated on AWIGBH. During the final jury instructions, the trial court walked the jury through the verdict form to clarify the different charges against defendant. With respect to Count 4, the court said, "[Defendant is] charged with felony[ ]firearm, which is possessing and or using a gun or having a gun at the time of committing some other crime, and that would be the assault with intent to do great bodily harm." Later, the court instructed:

And, um, as I mentioned earlier too when I was going over the jury verdict form with you, the defendant is charged with two separate counts of what we call felony[-]firearm. That is, possessing or having a firearm in the commission of another felony.

There's two felony[-]firearm counts here that you have to consider, Count 4 and Count 6. Each one attaches to a different underlying felony.

In Count 4, defendant Masters is charged with the crime of possessing a firearm at the time that he committed the crime of assault with intent to do great bodily harm less than murder against Quinte Sanders.

And to prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the defendant committed *either the assault with intent to do great bodily harm or felonious assault* against Quinte Sanders.

That's for the beating, right?

And these charges have already been defined for you.

Secondly, that at the time the defendant committed either one of those crimes, he knowingly carried or possessed a firearm. [Emphasis added.]

As defendant correctly points out, the italicized portion of the above jury instructions was clearly inaccurate because the prosecution charged Count 4 only in connection with AWIGBH, while the felony-firearm charge in Count 6 was predicated on the three felonious assault charges

in Counts 2, 3, and 5. There could be no legitimate strategic reason for defense counsel not to have objected to this error. Defense counsel's failure to object to the inaccurate jury instruction fell below an objective standard of reasonableness. See *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012) (finding deficient performance where the defendant's attorney did not object to defective instructions that omitted an essential element of the crime). However, defendant cannot demonstrate that he was prejudiced by the trial court's error. *Trakhtenberg*, 493 Mich at 51. The jury was correctly instructed at other times and the verdict form clearly specified that Count 4 related only to AWIGBH. This Court has found that a proper verdict form significantly reduced the prejudicial effect of a defective jury instruction that omitted an essential element. *Eisen*, 296 Mich App at 330.

Furthermore, in evaluating the effect of improper jury instructions, this Court considers the instructions as a whole. *Kowalski*, 489 Mich at 501. Immediately after the trial court defined the first element of Count 4 as requiring that "defendant committed either the [AWIGBH] or felonious assault against Quinte Sanders," the court clarified, "That's for the beating, right?" The only counts that could arguably be viewed as relating to "the beating" were AWIGBH and the felonious assault underlying Count 2 (pistol-whipping Sanders). The jury acquitted defendant of Count 2. There is no evidence on the record that the jury convicted defendant of Count 4 based on anything other than a finding that defendant possessed a firearm when he later assaulted Sanders. *Trakhtenberg*, 493 Mich at 51.

Defendant also argues that defense counsel performed deficiently by failing to request an instruction regarding the order in which the jury should deliberate on the offenses charged. We disagree. In *People v Handley*, 415 Mich 356, 361; 329 NW2d 710 (1982), our Supreme Court stated:

> [A] jury instructed after the day this opinion is released must be told to consider the principal charge first. It should then be instructed that if it fails to convict or acquit or is unable to agree whether to convict or acquit on that offense, it may then turn to lesser offenses. The correct instruction would be that after the jury has given consideration to the greater offense, it may turn to lesser offenses either if it finds the defendant not guilty of the greater offense or if it is unable to agree on whether the defendant is guilty or not guilty of the greater offense.

The trial court in this case did not instruct the jury about the order of deliberations as outlined in *Handley*. Nor, however, did it issue any instructions that precluded the jury, explicitly or by implication, from considering aggravated assault under Count 1 without first unanimously agreeing that defendant was not guilty of AWIGBH. Consequently, the absence of an instruction regarding the order of deliberations in this case was far less significant than the circumstances at issue in *Handley*. As noted earlier, we do not review specific jury instructions in a vacuum; the instructions must be viewed as a whole to properly assess claims of instructional error. *Kowalski*, 489 Mich at 501. With respect to Count 1, the court told the jury that it had three voting options: "It's either not guilty or guilty of assault with intent to do great bodily harm less than murder, or guilty of a lesser crime called aggravated assault." Later, when the trial court described the elements of the offenses at issue, it again noted that the jury could "consider the lesser crime of aggravated assault" under Count 1. The trial court also instructed the jury, without reference to any specific charge, that its verdict had to be unanimous. Nothing in these instructions interfered

with the jury's discretion to consider the lesser included offense. Therefore, even if defense counsel erred by failing to request a specific instruction on the order of deliberations, defendant cannot demonstrate prejudice. *Trakhtenberg*, 493 Mich at 51.

## V. SEARCH AND SEIZURE

Defendant also argues that his Fourth Amendment rights were violated when the police searched his vehicle while executing a search warrant at the repair shop, and that he was denied the effective assistance of counsel when his attorney did not move to suppress the evidence that was discovered in defendant's vehicle. We disagree.

To preserve a challenge to the constitutionality of a search and seizure, the defendant must move for suppression of the illegally seized evidence before the trial court. *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). Because defendant did not move to suppress the evidence seized from his car, this issue is unpreserved. This Court reviews unpreserved issues of constitutional law for plain error. *People v Henry (After Remand)*, 305 Mich App 127, 160; 854 NW2d 114 (2014).

"A defendant has the right to be secure from unreasonable searches and seizures under both the federal and state constitutions." *People v McGhee*, 255 Mich App 623, 625; 662 NW2d 777 (2003). Searches and seizures that are not conducted pursuant to a valid warrant or an exception to the warrant requirement are unreasonable and, therefore, unconstitutional. *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). In order to provide reasonable guidance to those who execute a search warrant, the warrant "must particularly describe the place to be searched and the persons or things to be seized." *Id*. As a general matter, "evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings." *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000).

Defendant contends that the search of his vehicle was unlawful because the search warrant pertained only to the auto repair shop, and his vehicle was parked in a lot north of the building that was not owned by the auto repair shop. We find no factual support in the record for defendant's claim. The police searched the shop pursuant to a warrant authorizing the search of 19984 Conant in Detroit, Michigan, as well as "the entire premises, all out buildings, garages, or other storage buildings related to the above-described premises, all containers in or on the premises and curtilage or storage area related to the above described place." Detective Thomas testified that he seized defendant's vehicle in the course of executing the search warrant and discovered electronic equipment belonging to Sanders in the trunk during an inventory search. Defendant provides this Court with an affidavit saying that his car was not parked in a lot owned by the shop at the time of the search, but the record contains no evidence in support of this self-serving statement. On the record before us, we find no plain error. Even if we were to find plain error, Sanders testified that the equipment had been removed from his vehicle when he returned to claim it, and defendant was recorded on video removing that equipment. In our judgment, it is more probable than not that the jury would have convicted defendant of larceny from a vehicle even if the equipment recovered from defendant's vehicle had been suppressed. *Henry*, 305 Mich App at 160. For similar reasons, defense counsel was not ineffective for failing to move to suppress this evidence. An attorney is not required to raise meritless objections, *Eisen*, 296 Mich App at 329, and defendant cannot establish on the existing record that a motion to suppress would have been successful if pursued

by defense counsel. And as already noted, it does not appear reasonably probable that the outcome of the trial would have been different but for counsel's failure to seek suppression. Accordingly, defendant cannot establish either deficient performance or prejudice. *Trakhtenberg*, 493 Mich at 51.

## VI. PROSECUTORIAL MISCONDUCT

Defendant also argues that the prosecutor's closing argument impermissibly commented on defendant's failure to testify. We disagree.

Defendant did not preserve his challenge to the prosecutor's closing argument by placing a contemporaneous objection and requesting a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). This Court reviews unpreserved claims of prosecutorial misconduct for plain error. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Claims of prosecutorial misconduct or error are reviewed on a case-by-case basis, and this Court must consider the alleged error in the context of the full record. *Id*. at 64. "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). When reviewing challenges concerning closing arguments, the "prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App at 64.

Despite the broad discretion the prosecution possesses to craft persuasive closing arguments, it cannot comment on a defendant's failure to testify. *People v Mann*, 288 Mich App 114, 120; 792 NW2d 53 (2010). "Such remarks are prohibited because they ask the jury to draw the inference that the defendant is guilty or hiding something merely because he has not taken the stand." *Id*. (quotation marks and citation omitted). Defendant takes issue with the following portion of the prosecution's closing argument:

> Now, even though, and we've talked a great deal about how [defendant] wasn't physically present at the time of that first attack, but we know [defendant] is who started this all off. We know that he's the one who lifts the shirt to prove a point. To make a statement. And he doesn't denounce himself from these actions afterwards.
>
> We know that he's still on scene. He's at the shop there. He still participating in this. We know that Mr. Sanders is trapped in the garage alone.

Defendant argues that the when the prosecution said he did not "denounce himself from these actions afterwards," it was commenting on the fact that he did not testify, thereby implying that defendant bore the burden of disproving the allegations against him. We do not agree with defendant's characterization of this statement. It is evident in context that the prosecution's remark about defendant's failure to "denounce himself" refers to defendant's actions that day in the auto repair shop, not his actions at trial. Immediately after that statement, the prosecution stated that defendant was "still on the scene" and "still participating in this." The prosecution's comment

-12-

was merely that after having escalated matters by flashing a gun at Sanders in the customer service area, defendant did nothing to disavow the implied threat or halt the progression of the increasingly volatile situation. The prosecution also clearly stated during oral argument that it bore the burden of proving that defendant committed the charged offenses and that he did not act in self-defense. Defendant has not established that the prosecution's comment was improper. *Mann*, 288 Mich App at120. Nor was defense counsel ineffective for failing to objected to this isolated statement, as counsel was not required to make a meritless objection. *Eisen*, 296 Mich App at 329.

## VII. SCORING ERROR

Defendant argues that the trial court erred in its scoring of offense variables (OVs) 1, 2, and 14, and that defense counsel was ineffective for failing to object to the scoring of OVs 1 and 2. We agree that OV 1 was erroneously scored, but conclude that defendant has not demonstrated that he is entitled to resentencing.

To preserve a scoring error, the defendant must raise the issue at sentencing, in a motion for resentencing before the trial court, or in a motion to remand filed with this Court. *People v Hershey*, 303 Mich App 330, 353; 844 NW2d 127 (2013). Of the scoring issues raised on appeal, defendant only objected to the scoring of OV 14 at sentencing. Accordingly, only defendant's challenge to OV 14 is preserved for review.

In assessing points under the sentencing guidelines, the trial court must make factual findings by a preponderance of the evidence, and those findings are reviewed for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. We review unpreserved scoring errors for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004); *People v Wiley*, 324 Mich App 130, 150-151; 919 NW2d 802 (2018). "To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Wiley*, 324 Mich App at 151 (quotation marks and citation omitted).

Defendant was assessed 15 points for OV 1. MCL 777.31(1)(c) directs the trial court to assess 15 points when "[a] firearm was pointed at or toward a victim . . . ." "OV 1 is an 'offense-specific' variable," which means that only conduct relating to the sentencing offense may be considered. *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014) (citation omitted). The sentencing offense for defendant's guidelines score was his AWIGBH conviction, which was predicated on the events surrounding the second battery in the garage. Defendant argues that he set his gun down before attacking Sanders and thus did not point it "at or toward" him while committing AWIGBH. We agree.

Mere possession of a firearm during the sentencing offense will not satisfy the scoring conditions under MCL 777.31(1)(c), which apply only where "[a] firearm was *pointed at or toward* a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon[.]" (Emphasis added.) The only evidence supporting the trial court's scoring of OV 1 is Sanders's testimony that defendant struck

-13-

him with a gun. Although Sanders was adamant that he saw defendant swing the gun at him, there is no indication that defendant pointed the gun at or toward Sanders in doing so.

Defendant was also assessed five points for OV 2, which is required when "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon[.]" MCL 777.32(1)(d). Because nothing in the statutory language of MCL 777.32 suggests that the Legislature intended for conduct outside the sentencing offense to be considered under OV 2, the trial court was again required to confine its analysis to conduct relating to the sentencing offense. See *People v McGraw*, 484 Mich 120, 129; 771 NW2d 655 (2009) ("Reading the provisions of MCL 777.1 *et seq*. in harmony suggests that the offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise."). Defendant argues that he did not "possess or use" a pistol during the sentencing offense, because he set it down before approaching Sanders. We disagree.

Again, Sanders testified that defendant hit him with a gun. There are moments in the video both before and after the second battery that clearly depict defendant holding a gun. While the footage is clear enough to discern defendant's repeated striking motion during the second battery, the video sheds little light on whether defendant was holding or otherwise in possession of a gun at that time. Given the conflicting evidence on this point, trial court's scoring of OV 2 was not plainly erroneous. In any event, even crediting defendant's version of events, the trial court could have found by a preponderance of the evidence that defendant constructively possessed the gun when he set it down a few feet away from him. See *People v Burgenmeyer*, 461 Mich 431, 437; 606 NW2d 645 (2000) ("[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonable accessible to the defendant."). The prosecution argued that defendant had at least constructive possession of the gun during the whole encounter, and the jury found defendant guilty of felony-firearm in connection with AWIGBH.

Defendant also makes passing reference to an error in the scoring of OV 14, MCL 777.44 (offender's role in multiple offender situation), but offers absolutely no substantive argument concerning the basis of the alleged error. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Miller*, 326 Mich App at 739 (quotation marks and citation omitted).

We agree with defendant that OV 1 was scored in error, but disagree that OV 2 was, and hold that defendant has abandoned his challenge to the scoring of OV 14. Because reducing the number of points assessed for OV 1 would not alter defendant's recommended minimum sentence range under the guidelines, resentencing is not required. *People v Francisco*, 474 Mich 82, 89 & n 8; 711 NW2d 44 (2006). For the same reason, defendant's counsel was not ineffective in failing to object to the scoring of OVs 1 and 2. See *People v McFarlane*, 325 Mich App 507, 537; 926 NW2d 339 (2018).

Affirmed.


/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

-14-